IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL ROBERSON, )
)
        Plaintiff, )
)
v. )
) Civil Action No. 13-1183
CAROLYN W. COLVIN, )
ACTING COMMISSIONER OF )
SOCIAL SECURITY, )
)
        Defendant. )

<u>MEMORANDUM JUDGMENT ORDER</u>

AND NOW, this 26th day of August, 2014, upon consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act, IT IS ORDERED that the Acting Commissioner's motion for summary judgment (Document No. 16) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 12) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those

findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Moreover, it is well settled that disability is not determined merely by the presence of impairments, but by the effect that those impairments have upon an individual's ability to perform substantial gainful activity. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff filed his applications for DIB and SSI on April 12, 2010, alleging disability beginning on September 15, 2007, due to depression, anxiety and back, leg and foot problems. Plaintiff's applications were denied. At plaintiff's request, an ALJ held a hearing on January 25, 2012. At the hearing, plaintiff's counsel amended his alleged disability onset date to February 5, 2010, which is the day after the previous unfavorable decision issued on his earlier application. Plaintiff's counsel acknowledged that the prior decision, which subsequently was upheld by the Appeals Council, had become final and binding.[1] By the amendment, plaintiff's counsel constructively withdrew his DIB claim because his date last insured for DIB purposes was March 31, 2008. As a result, the ALJ dismissed plaintiff's claim for DIB.

---

[1] Consequently, the period prior to February 5, 2010, has been fully adjudicated, and the relevant period of review in this case is from February 5, 2010, through March 15, 2012, which is when the ALJ issued the unfavorable decision on plaintiff's SSI claim.

On March 15, 2012, the ALJ issued a decision on plaintiff's SSI claim, finding that he is not disabled. The Appeals Council denied plaintiff's request for review on July 23, 2013, making the ALJ's decision the final decision of the Commissioner. The instant action followed.

Plaintiff, who has a high school education through a general equivalency degree, was 45 years old on his amended alleged disability onset date, and is classified as a younger individual under the regulations. 20 C.F.R. §416.963(c). Plaintiff has past relevant work experience as a dishwasher, sales clerk, janitor and musician, but he has not engaged in substantial gainful activity at any time since his amended alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert at the hearing, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. Although the medical evidence established that plaintiff suffers from the severe impairments of the residual effects of right tibia and ankle fractures, osteoarthritis of the left knee, L5 disc protrusion, mood disorder and a history of learning disability and polysubstance abuse, those impairments, alone or in combination, do not meet or equal the criteria of any of the listed impairments set forth in Appendix 1 of 20 C.F.R., Subpart P, Regulation No. 4 ("Appendix 1").

The ALJ found that plaintiff retains the residual functional capacity to perform sedentary work with a number of additional non-exertional limitations. Plaintiff is limited to performing

work that involves simple, repetitive tasks that do not require dealing with the general public or maintaining close interaction and cooperation with co-workers (collectively, the "RFC Finding").

Based upon testimony by a vocational expert, the ALJ concluded that plaintiff's vocational factors and residual functional capacity enable him to perform work that exists in significant numbers in the national economy, such as a sorter, assembler or addresser. Accordingly, the ALJ found that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. §1382c(a)(3)(B).

The Commissioner has promulgated regulations that incorporate a five-step sequential evaluation process for determining whether a claimant is disabled. The ALJ must determine: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the

claimant can perform any other work that exists in the national economy, in light of his age, education, work experience and residual functional capacity.[2]  20 C.F.R. §416.920(a)(4).  If the claimant is found disabled or not disabled at any step, further inquiry is unnecessary.  Id.

In this case, plaintiff argues that the ALJ erred at step 5 because: (1) the ALJ did not properly evaluate the opinion of various physicians who treated and examined him; and (2) the ALJ improperly assessed plaintiff's credibility by relying on his own lay opinion and bias.  The court finds that these arguments lack merit.

Plaintiff first argues that the ALJ did not properly evaluate the opinion of his treating psychiatrist, Dr. Tracy Javaherian, as well as the respective opinions of Dr. Steven Pacella, Dr. Anita LaLumere and Dr. Antonio Riccelli, who performed one-time consultative examinations.  Contrary to plaintiff's position, the ALJ properly evaluated the medical opinions in this case.

First, Dr. Javaherian completed a "check the box" form report which asked for an assessment of plaintiff's ability to perform various mental work-related activities.  (R. 830-832).  Dr. Javaherian was asked to rate plaintiff's ability to make occupational adjustments, performance adjustments and

---

[2] Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by his impairments.  20 C.F.R. §416.945(a)(1).  In assessing a claimant's residual functional capacity, the ALJ is required to consider his ability to meet the physical, mental, sensory and other requirements of work.  20 C.F.R. §416.945(a)(4).

personal/social adjustments as "unlimited," "good," "fair," "poor" or "none". In all areas, Dr. Javaherian rated plaintiff's ability to function as "poor," which is defined as "ability to function in this area is seriously limited but not precluded." (R. 830-831).

The ALJ determined that Dr. Javaherian's opinion was not well supported because it was set forth on a form report without any supporting explanation. (R. 18). Further, the ALJ found that Dr. Javaherian's restrictive assessment of plaintiff's mental functional ability was not supported by the records of his mental health treatment. (R. 18).

After reviewing the record, the court agrees with the ALJ that Dr. Javaherian's opinion was not entitled to controlling weight. As the ALJ indicated, Dr. Javaherian's form report upon which plaintiff relies does not explain the basis for her assessment. We also note that although Dr. Javaherian rated plaintiff's ability to perform mental work-related functions as "poor," the definition of "poor" provided on the form report means that one's ability to function is seriously limited *but not precluded*. (R. 830). Further, Dr. Javaherian's opinion that plaintiff's ability to function in all areas was "poor," is contradicted by the fact that the doctor assessed plaintiff's GAF

AO 72
(Rev. 8/82)

score at 55, (R. 832), which indicates only moderate symptoms.[3] In any event, the ALJ fully accounted for plaintiff's mental limitations identified by Dr. Javaherian by including in the RFC Finding a restriction to work that involves simple, repetitive tasks that do not require dealing with the general public or maintaining close interaction and cooperation with co-workers. For these reasons, the court finds that there was no error in the ALJ's consideration of Dr. Javaherian's opinion of plaintiff's ability to perform various mental work related tasks.

Plaintiff also complains that the ALJ improperly rejected the opinions of Drs. Pacella, LaLumere and Riccelli, who each performed a consultative examinations of plaintiff. Plaintiff's position as to each consulting examiner is without merit.

First, Dr. Pacella examined plaintiff and issued his opinion in July 2006, which predated the relevant period in this case by over three and a half years. Even if Dr. Pacella's opinion properly could be considered, he indicated that plaintiff was a marginal historian and the examination findings did not appear to be a true indicator of plaintiff's functioning. (R. 285, 288-89).

Next, Dr. LaLumere concluded that plaintiff had only slight

---

[3] The GAF scale is used by mental health clinicians to rate an individual's social, occupational and psychological functioning. The GAF scale considers those areas of functioning on a hypothetical continuum of mental health to illness. The highest possible score is 100 and the lowest is 1. A score between 51-60 indicates that one has moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers). Diagnostic and Statistical Manual of Mental Disorders (4th Ed. 2000).

AO 72
(Rev. 8/82)

or moderate limitations in most mental work-related areas of functioning, but she found that he had a marked limitation in his ability to respond appropriately to work pressures in a usual work setting and to respond appropriately to changes in a routine work setting. (R. 776).

The ALJ determined that the results of Dr. LaLumere's consultative examination were entitled to only little weight because plaintiff made misrepresentations to the doctor during the exam. (R. 18). For example, plaintiff told Dr. LaLumere that he attempted suicide by jumping out of a window, at which time he injured his back and shattered his leg. (R. 769). To the contrary, the record indicates that plaintiff jumped out of a window while fleeing from law enforcement. (R. 1081, 1146).

The ALJ did not err by giving little weight to Dr. LaLumere's opinion in light of the fact that plaintiff was not completely forthright when she examined him. Nevertheless, to the extent Dr. LaLumere found that plaintiff would have difficulty responding to work pressures and changes, the ALJ accounted for that deficiency by limiting him to simple, repetitive tasks that do not require him to deal with the general public.

Finally, the ALJ properly determined that Dr. Riccelli's opinion contained on a form report that plaintiff could only stand and walk one hour in an eight-hour workday was entitled to little weight. (R. 17-18, 816). That finding is inconsistent with Dr. Riccelli's written report, which indicates that plaintiff's range of motion and gait were normal and that he can "sit, bend, **stand**,

AO 72
(Rev. 8/82)

**walk**, lift and grasp without any difficulty." (R. 821) (emphasis added). For this reason, as well as those discussed above, the ALJ properly considered and evaluated the medical opinions in this case.

Plaintiff next argues that it was improper for the ALJ to refer to his own background as an amateur musician when he noted that plaintiff's admitted ability to perform and compose music is inconsistent with his claim of disability. According to plaintiff, the ALJ's reference to his own musical background shows that the ALJ improperly interjected lay opinion and bias in deciding this case.

As an initial matter, the ALJ properly may consider plaintiff's activities of daily living as one factor in assessing credibility. See 20 C.F.R. §416.929(c)(3)(i). Accordingly, the ALJ was permitted to note plaintiff's ability to perform and compose music in determining whether his claims were credible. We note that the ALJ's consideration of plaintiff's daily activities was only one item among many factors the ALJ considered in assessing plaintiff's credibility.

Furthermore, to the extent that plaintiff suggests the ALJ somehow was biased against him, that argument is unfounded. Due process requires that social security claimants be afforded a full and fair hearing. Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995). Essential to a fair social security hearing is the right to an unbiased judge who fulfills his duty to develop a full and fair record. Id. An ALJ is presumed to be unbiased unless there

(Rev. 8/82)

- 9 -

is a specific showing for cause to disqualify.  Schweiker v. McClure, 456 U.S. 188, 195 (1982).  The burden to establish a disqualifying interest rests with the party asserting bias.  Id. at 196.  A party asserting bias must show that the behavior of the ALJ was "so extreme as to display clear inability to render fair judgment."  Liteky v. United States, 510 U.S. 540, 551 (1994).

Plaintiff has failed to make such a showing in this case. There is no indication that the ALJ failed to fully develop the record, that he interfered with the introduction of evidence concerning plaintiff's claim or that he made any comments that show he was biased against plaintiff or his particular case.  The ALJ's observation about plaintiff's musical ability based on his own personal experience does not demonstrate that he was biased against plaintiff.  In sum, plaintiff has failed to establish that the ALJ was biased against him or that he otherwise improperly evaluated plaintiff's credibility in this case.

In conclusion, after carefully and methodically considering all of the medical evidence of record, the ALJ determined that plaintiff is not disabled within the meaning of the Act.  The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous.  Therefore, the decision of the Commissioner must be affirmed.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc: Robert W. Gillikin, Esq.
    Rutter Mills, LLP
    160 W. Brambleton Ave.
    Norfolk, VA 23510

    Christy Wiegand
    Assistant U.S. Attorney
    700 Grant Street
    Suite 4000
    Pittsburgh, PA 15219

AO 72
(Rev. 8/82)